## IN THE DISTRICT COURT OF MCINTOSH COUNTY
## STATE OF OKLAHOMA

TERESA GARRISON PRATT; LONGREACH
ENERGY 2, LLC; and ROYFIN NATURAL GAS,
LLC, for themselves and all others similarly situated,

            Plaintiffs,

v.

CALYX ENERGY III, LLC; CALYX ENERGY III
HOLDINGS, LLC; RIVERSIDE MIDSTREAM
PARTNERS, LLC; RIVERSIDE GATHERING,
LLC; and CALVIN D. CAHILL,

            Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)

**FILED**

JUL 08 2024

LISA RODEBUSH, Court Clerk
McINTOSH COUNTY
By _____ Deputy

Case No. CJ-2024-79

### PLAINTIFFS' CLASS-ACTION PETITION

Plaintiffs TERESA GARRISON PRATT, LONGREACH ENERGY 2, LLC, and ROYFIN

NATURAL GAS, LLC, on behalf of themselves and all others similarly situated (the "Class"), file

this Petition against Defendants Calyx Energy III, LLC ("Calyx Energy"), Calyx Energy III

Holdings, LLC ("Calyx Holdings"), Riverside Midstream Partners, LLC ("Riverside Midstream"),

Riverside Gathering, LLC ("Riverside Gathering,")[1] and Calvin D. Cahill ("Cahill"),[2] and state:

### GENERAL FACTUAL ALLEGATIONS SUPPORTING ALL CLAIMS

1.     This action arises from Defendants' collective scheme to perpetrate a fraud against

Plaintiffs and the Class. Through Defendants' joint effort, up to ▇▇▇▇▇▇ in "earnout" revenue

attributable to natural gas production was concealed from Plaintiffs and the Class.

2.     Defendants orchestrated a scheme to appropriate revenue from Plaintiffs and the

Class. To perpetrate this fraud, Defendant Cahill created a series of entities, all controlled by

Defendant Cahill, to secretly funnel revenue away from Plaintiffs and the Class.

---

[1] Riverside Midstream and Riverside Gathering, collectively as "Riverside."
[2] Calyx Energy, Calyx Holdings, Riverside, and Cahill, collectively as "Defendants."

Exhibit 1 to Notice of Removal
Page 1 of 25

3.     Defendant Cahill created Calyx Holdings, a limited liability company. Defendant Cahill was the sole member and owner of Calyx Holdings. Additionally, Defendant Cahill served as the CEO and President of Calyx Holdings.

4.     Defendant Cahill then created three additional limited liability companies, each a wholly owned subsidiary, directly or indirectly, of Calyx Holdings: (1) Calyx Energy; (2) Riverside Midstream; and (3) Riverside Gathering.

5.     Defendant Cahill was the CEO and President of all four entities. All four entities also share the same office, phone number, and registered agent.

6.     Riverside Gathering was a single-member entity whose sole member and owner was Riverside Midstream. Riverside Midstream and Calyx Energy were each single-member entities whose sole member and owner was Calyx Holdings. Calyx Holdings was a single-member entity whose sole member and owner was Defendant Cahill.

7.     In sum, Defendant Cahill was the President, CEO, and sole owner, directly and indirectly, of all four entities, and has been at all relevant times, as illustrated below.



- 2 -

Exhibit 1 to Notice of Removal
Page 2 of 25

8.    ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮ On information and belief, Calyx Energy is also a disregarded entity.

9.    Defendant Cahill employed his various entities as mere instrumentalities of each other in order to personally pocket millions of dollars in revenue owed to Plaintiffs and the Class.

10.    Pursuant to the Production Revenue Standards Act, 52 Okla. Stat. §§ 570.1 through 570.15 ("PRSA") the legislature defined royalty proceeds to mean "the share of proceeds **or other revenue derived from or attributable to <u>any production</u> of oil and gas**…" 52 Okla. Stat. § 570.2(8) (emphasis added).

11.    Further, "production" is defined under the PRSA to mean "the physical act of severance of oil and gas from a well by an owner **and includes but is not limited to the sale or other disposition** thereof." 52 Okla. Stat. § 570.2(2) (emphasis added).

12.    Defendants should have paid all revenue *derived from or attributable to any production* of natural gas from the class wells to Plaintiffs and the Class.

13.    As set out below, Defendants received up to ▮▮▮▮▮ in revenue that was directly derived from or attributable to the production of natural gas from the class wells. Defendants conspired to actively conceal this revenue from Plaintiffs and the Class.

14.    Beginning in 2017, Defendant Cahill conspired with and employed his various entities to accomplish the following fraudulent scheme with midstream company Tall Oak Woodford, LLC ("Tall Oak"):

> 1) Defendants collectively promised to rescind or terminate all current midstream contracts with Enable and EnLink, and further promised to dedicate gas from class wells to Tall Oak (to the exclusion of Tall Oak's competitors);
>
> 2) Tall Oak promised in exchange to pay revenue to Defendants based upon the volumes of natural gas production that Defendants produced from the class wells and sent through the Tall Oak system;

- 3 -

Exhibit 1 to Notice of Removal
Page 3 of 25

3) Even though Calyx Energy was the operator producing the volumes of natural gas from the class wells, Defendants orchestrated for Tall Oak to bypass Calyx Energy and pay approximately ▮▮▮▮▮ in earnout revenue directly to Calyx Energy's affiliates—Defendants Riverside, Calyx Holdings, and/or Calvin D. Cahill.

4) Defendants actively concealed from and refused to pay such revenue to Plaintiffs and the Class

15.     Defendants conspired to obtain and conceal revenue streams under the Riverside PSA contract based on natural gas production from the class wells. Defendants refer to this revenue as "earnouts." The common control and relationship between the Defendants facilitated this scheme, as set out below.

## CALYX—RIVERSIDE RELATIONSHIP

16.     Defendant Cahill, through both his Calyx Holdings and Calyx Energy entities, acquired the rights to drill and operate oil and gas wells in McIntosh and surrounding counties in Oklahoma.

17.     Defendant Calyx Energy, as operator, produced and sold natural gas from these wells.

18.     Plaintiffs and the Class own interests in these oil and gas wells, which are all currently subject to the Gas Gathering and Processing Agreement between Calyx Energy III, LLC and Tall Oak ("Class Wells").

19.     Defendant Calyx Energy is the operator of the Class Wells.

20.     In 2016, Defendant Cahill, through his entity Calyx Energy, executed a contract with Enable Gathering and Processing, LLC ("Enable") for gas gathering and processing services for the Class Wells. Defendant Cahill signed the Enable contract.

- 4 -

Exhibit 1 to Notice of Removal
Page 4 of 25

21.     The Enable contract was a standard midstream services contract, wherein Enable performed midstream services for standard rates. The Enable contract did not provide for any earnout revenue to be paid to Defendants.

22.     Rather than continuing to pay third-party Enable to perform these midstream services, Defendant Cahill created his Riverside entities to construct and operate a gathering system for the Class Wells ("Riverside Gathering System").

23.     Defendant Cahill then employed his Riverside entities to provide gathering, compression, and dehydration services for the Class Wells, which Plaintiffs and the Class paid for.

24.     Because Riverside was an affiliate of Calyx Energy and wholly owned (indirectly) by Defendant Cahill, Defendants collectively reaped the benefit of the Riverside contract.

25.     While Riverside provided gathering and compression services for the Class Wells, the natural gas production still needed to undergo processing. Defendants initially contracted with Enable and EnLink Midstream Services, LLC ("EnLink") to provide processing services.

26.     The Defendants' alter ego relationship and common control was key to Defendants accomplishing their scheme to fraudulently appropriate the "earnout" revenue, as described below.

## EARNOUT SCHEME

27.     On or around August 2017, Defendants jointly concocted a scheme whereby Defendants agreed to sell the Riverside Gathering System to Tall Oak, agreed to terminate or rescind their existing midstream contracts with Enable and EnLink, agreed to non-standard rates for Tall Oak's services, and promised to dedicate all available production from Class Wells exclusively to Tall Oak for                    .

28.     In exchange, Tall Oak agreed to pay revenue, including "earnouts," to Defendants based upon the volume of natural gas production from the Class Wells.

- 5 -

Exhibit 1 to Notice of Removal
Page 5 of 25

29.     On or around August 2017, Defendants simultaneously executed a series of contracts with Tall Oak.

30.     On August 25, 2017, Defendants Riverside Midstream and Riverside Gathering executed an Asset Purchase and Sale Agreement with Tall Oak ("PSA")

31.     Defendant Cahill signed the PSA.

32.     Defendant Cahill also provided that his personal email address, calvin.cahill@gmail.com, was to be used for all official notifications regarding the PSA under Section 10.1, pg. 33. Defendant Cahill also provided Calyx Holdings' phone number as the correct contact information for Riverside.

33.     On the exact same day, August 25, 2017, Defendant Calyx Energy executed a Gas Gathering and Processing Agreement with Tall Oak ("GGPA").

34.     Defendant Cahill signed the GGPA.

35.     Under the PSA, Defendants Riverside promised that their affiliate, Calyx Energy (who was not a party to the PSA) would divert volumes of natural gas production from the Class Wells away from Enable and EnLink and directly to Tall Oak.

36.     Pursuant to the PSA, if Calyx Energy (who was not a party to the PSA) produced and dedicated to Tall Oak ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, and ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, Tall Oak was contractually obligated to pay revenue called "Earnouts" to Defendants Cahill, Riverside and/or Calyx Holdings.

37.     In sum, even though Defendant Calyx Energy was the producer, Defendants required that the revenue tied to such production be paid to the other Defendants.

- 6 -

Exhibit 1 to Notice of Removal
Page 6 of 25

38.    The PSA guaranteed that if Calyx Energy produced the requisite volumes of natural gas from the Class Wells into Tall Oak's system, then Tall Oak would pay up to ███████████ in Earnouts to Defendants Riverside, Calyx Holdings, and/or Defendant Cahill.

39.    Pursuant to the PSA ████████████████████████████████████ ████████████████████████████, and Calyx Holdings was deemed to be the owner of the Riverside Gathering System.

40.    In sum, all revenue under the PSA flowed directly to Calyx Holdings and/or Defendant Cahill.

41.    On information and belief, Calyx Energy is also a disregarded entity, with all revenue from Calyx Energy flowing directly to Calyx Holdings and/or Defendant Cahill.

42.    Defendant Cahill's independent, direct, and fraudulent conduct enabled Defendants to perpetrate this fraud and scheme against Plaintiffs and the Class.

43.    In executing PSA and GGPA, Defendant Cahill exceeded the scope of his authority as CEO of Calyx Energy, including but not limited to for the reasons that Defendant Cahill, as CEO of Calyx Energy, was not authorized to funnel revenue away from Calyx Energy and towards his other wholly-owned subsidiaries.

44.    Like the PSA, under the GGPA, Calyx Energy promised not to extend or renew any contracts with Enable or EnLink, and instead promised to dedicate gas from the Class Wells exclusively to the Tall Oak GGPA.

45.    Further, under the GGPA, Calyx Energy represented that it was selling the Riverside Gathering System to Tall Oak. However, the Riverside Gathering System was allegedly owned by Defendant Riverside.

- 7 -

Exhibit 1 to Notice of Removal
Page 7 of 25

46.    Finally, under ████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████

47.    In sum, Defendants acted as mere instrumentalities of one another, including: (1) Riverside obligating Calyx Energy to produce and dedicate gas to Tall Oak; (2) Calyx Energy representing under the GGPA that Calyx Energy owned and was selling the Riverside Gathering System to Tall Oak; (3) ████████████████████████████████████████████
████████████████████████████████████████████████████████; (4) the Defendants collectively agreeing to pay "earnouts" tied to the volume of natural gas produced by Calyx Energy to Calyx Energy's affiliates; and (5) Defendant Cahill exercised common control over all Defendants, acting as CEO and President of every single entity involved in the Tall Oak transactions, and Defendant Cahill signed both the PSA and the GGPA.

48.    ████████████████████████████████████████████████
████████████████████████████████████████████████████████
██████████████████████████████████████████.

49.    In 2019, as soon as the Tall Oak Panther Creek Processing Plant went online, Defendant Calyx Energy terminated its existing processing contract with Enable and diverted the gas to Tall Oak for processing. The termination was signed by Defendant Cahill.

50.    Under the PSA, Defendants received earnouts based on the volume of MMBtus of natural gas from Class Wells that Defendants dedicated to Tall Oak.

- 8 -

Exhibit 1 to Notice of Removal
Page 8 of 25

51.     Defendants wholly failed to pay Plaintiffs and the Class their share of the earnouts attributable to the natural gas production from the Class Wells. Instead, Defendants fraudulently concealed the earnouts from Plaintiffs and the Class.

52.     Defendants leveraged the natural gas production from the Class Wells in order to receive and retain wholly unto themselves revenue in the form of earnouts.

53.     Defendants wrongfully failed to distribute this additional revenue to Plaintiffs and the Class in breach of the Production Revenue Standards Act and the Energy Litigation Reform Act. Defendants have also fraudulently and deceitfully concealed this additional revenue from Plaintiffs and the Class.

54.     Defendants failed to pay proceeds owed to Plaintiffs and the Class and did so with the actual, knowing and willful intent: (a) to deceive the person to whom the proceeds were due, or (b) to deprive proceeds from the person that Defendants knew, or were aware, was legally entitled thereto.

55.     Plaintiffs and the Class bring claims based on Defendants' scheme to conceal said proceeds, unjust enrichment, actual and constructive fraud and deceit, piercing the corporate veil/alter ego, civil conspiracy, and breach of the reasonably prudent operator standard, as more fully described below.

## PARTIES, JURISDICTION, AND VENUE

56.     Plaintiff Teresa Garrison Pratt is a resident of the State of Oklahoma.

57.     Plaintiff RoyFin Natural Gas, LLC ("RoyFin") is a foreign limited liability company with its principal place of business in Tulsa County, State of Oklahoma.

58.     Plaintiff Longreach Energy 2, LLC ("LE2") is a foreign limited liability company with its principal place of business in Tulsa County, State of Oklahoma.

- 9 -

Exhibit 1 to Notice of Removal
Page 9 of 25

59.    Defendant Calyx Energy is a foreign limited liability company with its principal place of business at 6120 South Yale Ave, Ste 1480, Tulsa, Tulsa County, State of Oklahoma.

60.    Defendant Calyx Holdings is a foreign limited liability company with its principal place of business at 6120 South Yale Ave, Ste 1480, Tulsa, Tulsa County, State of Oklahoma.

61.    Defendant Riverside Midstream is a foreign limited liability company with its principal place of business at 6120 South Yale Ave, Ste 1480, Tulsa, Tulsa County, State of Oklahoma.

62.    Defendant Riverside Gathering is a foreign limited liability company with its principal place of business at 6120 South Yale Ave, Ste 1480, Tulsa, Tulsa County, State of Oklahoma.

63.    On information and belief, Defendant Cahill is a resident of the State of Texas.

64.    Calyx Energy may be served through its registered agent, CT Corporation System, at 1833 South Morgan Road, Oklahoma City, Oklahoma 73128.

65.    Calyx Holdings may be served through its registered agent, Corporation Trust Company, at The Corporation Trust Center, 1209 Orange St., Wilmington, Delaware 19801 and through its CEO, President, and Owner, Calvin D. Cahill.

66.    Riverside Midstream may be served through its registered agent, CT Corporation System, at 1833 South Morgan Road, Oklahoma City, Oklahoma 73128.

67.    Riverside Gathering may be served through its registered agent, CT Corporation System, at 1833 South Morgan Road, Oklahoma City, Oklahoma 73128.

68.    Plaintiffs own mineral interests under wells operated by Calyx Energy in Hughes, McIntosh, Okfuskee, and Pittsburg Counties, all in the State of Oklahoma.

- 10 -

Exhibit 1 to Notice of Removal
Page 10 of 25

69.     Plaintiff Teresa Garrison Pratt owns oil, gas, and other minerals in McIntosh County, State of Oklahoma, under the Twain 1-10-3WH and Mifflin 1-14-26CH Wells.

70.     Plaintiff RoyFin owns oil, gas, and other minerals in in Hughes, Okfuskee, and Pittsburg Counties, State of Oklahoma under the Ace 1-1-36WH, Ace 2-1-36WH, Ace 3-1-25WH, Ace 4-1-25WH, Adams 1-36-25WH, Adams 2-36-25CH, Adams 2-36-25WH, Barger East 1-35-2CH, Birdie 1-31-30WH, Birdie 1-6-7WH, Birdie 2-31-30WH, Birdie 2-6-7WH, Birdie 3-31-30WH, Birdie 4-31-30WH, Carver 1-16-21WH, Eagle 1-32-29WH, Eagle 1-5-29WH, Eagle 2-5-29WH, Eagle 3-5-29WH, Eisenhower 3-36-25WH, Eisenhower 4-36-25WH, Eisenhower 5-36-25WH, Elsa 1-8-20WH, Halpert 1-17-5CH, Halpert 1-17-5MH, Halpert 2-17-5CH, Hamilton 2-14-26WH, Hamilton 2-14-2WH, Hamilton 3-14-26WH, Hamilton 3-14-2WH, Hamilton 4-14-26WH, Hamilton 4-14-2WH, Kennedy 1-31-30WH, Kennedy 2-31-30WH, Kennedy 3-31-30WH, Lincoln 1-14-11WH, Lincoln 1-23-26WH, Madison 1-23-14WH, Madison 2-23-14WH, Maverick 1-11-2CH, Maverick 1-14-23CH, Maverick 1-15-22CH, Meadors 25-1H, Meadors 25-2H, Meadors 36-1HX, Nicklaus 1-7-6WH, Nicklaus 1-8-5WH, Nicklaus 2-7-6WH, Nicklaus 2-8-5WH, Palmer 3-8-5WH, Palmer 4-8-5WH, Pocahontas 1-15-3WH, Rapunzel 1-10-3WH, Rapunzel 1-15-22WH, Rapunzel 2-10-3WH, Rapunzel 2-15-22WH, Rapunzel 3-10-3WH, Rapunzel 3-15-22WH, Roosevelt 1-5-18W, Roosevelt 2-5-18WH, Roosevelt 3-5-18WH, Roosevelt 4-5-18W, Scranton 1-19-31CH, Scranton 2-19-31MH, Thunder 1-13-1CH, Thunder 1-13-25CH, Thunder 1-18-30CH, and Thunder 1-18-6MH Wells.

71.     Plaintiff LE2 owns oil, gas, and other minerals in in Hughes, Okfuskee, and Pittsburg Counties, State of Oklahoma under the Ace 1-1-36WH, Ace 2-1-36WH, Ace 3-1-25WH, Ace 4-1-25WH, Adams 1-36-25WH, Adams 2-36-25CH, Adams 2-36-25WH, Barger East 1-35-2CH, Birdie 1-31-30WH, Birdie 1-6-7WH, Birdie 2-31-30WH, Birdie 2-6-7WH, Birdie 3-31-

- 11 -

Exhibit 1 to Notice of Removal
Page 11 of 25

30WH, Birdie 4-31-30WH, Carver 1-16-21WH, Eagle 1-32-29WH, Eagle 1-5-29WH, Eagle 2-5-29WH, Eagle 3-5-29WH, Eisenhower 3-36-25WH, Eisenhower 4-36-25WH, Eisenhower 5-36-25WH, Elsa 1-8-20WH, Elsa 1-9-21WH, Elsa 2-9-21WH, Halpert 1-17-5CH, Halpert 1-17-5MH, Halpert 2-17-5CH, Hamilton 2-14-26WH, Hamilton 2-14-2WH, Hamilton 3-14-26WH, Hamilton 3-14-2WH, Hamilton 4-14-26WH, Hamilton 4-14-2WH, Kennedy 1-31-30WH, Kennedy 2-31-30WH, Kennedy 3-31-30WH, Lincoln 1-14-11WH, Lincoln 1-23-26WH, Madison 1-23-14WH, Madison 2-23-14WH, Maverick 1-11-2CH, Maverick 1-14-23CH, Maverick 1-15-22CH, Meadors 25-1H, Meadors 25-2H, Meadors 36-1HX, Nicklaus 1-7-6WH, Nicklaus 1-8-5WH, Nicklaus 2-8-5WH, Palmer 3-8-5WH, Palmer 4-8-5WH, Pocahontas 1-15-3WH, Pocahontas 1-16-4WH, Pocahontas 2-16-4WH, Rapunzel 1-10-3WH, Rapunzel 1-15-22WH, Rapunzel 2-10-3WH, Rapunzel 2-15-22WH, Rapunzel 3-10-3WH, Rapunzel 3-15-22WH, Roosevelt 1-5-18W, Roosevelt 2-5-18WH, Roosevelt 3-5-18WH, Roosevelt 4-5-18W, Scranton 1-19-31CH, Scranton 2-19-31MH, Thunder 1-13-1CH, Thunder 1-13-25CH, Thunder 1-18-30CH, and Thunder 1-18-6MH Wells.

72.     This Court has personal jurisdiction over the parties.

73.     Venue is proper in McIntosh County, State of Oklahoma pursuant to 12 Okla. Stat.§ 134 as some of the events and omissions giving rise to the claims alleged herein occurred in McIntosh County, State of Oklahoma.

- 12 -

Exhibit 1 to Notice of Removal
Page 12 of 25

## CLASS ACTION ALLEGATIONS

74.     Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

75.     Plaintiffs bring this action individually and as the representatives of a class of individuals pursuant to 12 Okla. Stat. § 2023(B)(3) for all similarly situated oil and gas interest owners in the State of Oklahoma. The Class is comprised of:

> All non-excluded persons or entities who are entitled to revenue from natural gas production from oil and gas wells that are or were subject to the Gas Gathering and Processing Agreement dated August 25, 2017 between Calyx Energy III, LLC and Tall Oak Woodford, LLC (including all amendments and extensions thereto) under which Defendant Calyx Energy (including its affiliates, alter egos, affiliated predecessors, and affiliated successors) is or was the operator. The Class does not include working interest owners who market their share of the natural gas produced from Class Wells.

> The persons or entities excluded from the Class are: (1) agencies, departments, or instrumentalities of the United States of America or the State of Oklahoma; (2) Defendants, its affiliates, predecessors, and employees, officers, and directors; (3) any publicly traded company or their affiliated entity that purchases, produces, gathers, processes, or markets oil or gas; and (4) persons or entities that Plaintiffs' counsel is or may be prohibited from representing under Rule 1.7 of the Oklahoma Rules of Professional Conduct.

76.     Plaintiffs believe that the members of the Class are so numerous that joinder of all members is impracticable.

77.     The questions of fact or law common to Plaintiffs and the Class include, but are not limited to, those common questions related to their asserted causes of action including: (a) alter ego and civil conspiracy; (b) breach of the Production Revenue Standards Act, 52 Okla. Stat. § 570.1 *et seq.* and the Energy Litigation Reform Act, 52 Okla. Stat. §§ 901-903; (c) breach of the reasonably prudent operator standard and 52 Okla. Stat. § 902; (d) unjust enrichment; and (e) deceit and actual and constructive fraud.

78.     More particularly, such common questions include whether: (1) the earnout payments as described in the PSA are revenue derived from or attributable to natural gas

- 13 -

Exhibit 1 to Notice of Removal
Page 13 of 25

production within the meaning of the Production Revenue Standards Act; (2) Defendants failed to pay Plaintiffs and the Class their respective share of the PSA earnouts; (3) Defendants were unjustly enriched through the earnouts they received under the PSA; (4) Defendants fraudulently concealed the receipt of such PSA earnout payments from Plaintiffs and the Class; (5) Defendants Riverside Gathering, Riverside Midstream, and Calyx Energy are the alter egos of Defendant Calyx Holdings and/or Defendant Cahill; (6) Defendants acted in concert with each other, with a collective meeting of the minds and a common goal to unlawfully benefit themselves to the detriment of Plaintiffs and the Class; (7) all Defendants acted pursuant to an unlawful civil conspiracy to conceal and fraudulently appropriate revenue derived from natural gas production from the Class Wells, and each is liable for the damages suffered by Plaintiffs and the Class; (8) Defendants breached the duty to act as a reasonably prudent operator with respect to the operation of the Class Wells and the PSA revenue attributable to or derived from natural gas production from the Class Wells; (9) Defendants improperly disclosed on the check stubs, 1099s, and revenue statements Plaintiffs' and the Class's share of the PSA earnout revenue pursuant to the Production Revenue Standards Act, 52 Okla. Stat. §§ 570.1 through 570.15 ("PRSA"); (10) Defendants' failure to disclose on check stubs, 1099s, and revenue statements sent to Plaintiffs and Class their share of the PSA earnout revenue pursuant to the PRSA constitutes constructive fraud by Defendants; (11) Defendants owe certain statutory duties to Plaintiffs and the Class pursuant to the PRSA; (12) Defendants breached certain statutory duties to Plaintiffs and the Class pursuant to the PRSA; (13) the appropriate measure of damages, penalties, equitable and/or declaratory relief; and (14) Defendants failed to pay proceeds owing to the Class and did so with the actual, knowing and willful intent: (a) to deceive the Class, or (b) to deprive proceeds from the Class with knowledge, or awareness, that the Class was legally entitled to said proceeds.

- 14 -

Exhibit 1 to Notice of Removal
Page 14 of 25

79.     Plaintiffs' claims are typical of the claims asserted on behalf of the members of the Class because all members are similarly affected by Defendants' ubiquitous wrongful conduct and their claims are based on such conduct. Further, Defendants' anticipated defenses to Plaintiffs' claims are typical of the anticipated defenses that would likely be asserted against each and every member of the Class.

80.     Plaintiffs will fairly and adequately protect the interest of the members of the Class. Plaintiffs understand their duties as Class representatives. Plaintiffs have retained counsel competent and experienced in Oklahoma oil and gas law and oil and gas class actions.

81.     Class certification is appropriate because the averments of fact and questions of law herein, which are common to the members of the Class, predominate over any questions affecting only individual members.

82.     Plaintiffs and Plaintiffs' counsel have no known interests that conflict in any way with those of the members of the Class.

83.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Class-action treatment will allow a large number of similarly situated individuals to prosecute their common claims simultaneously in a single forum in the most efficient manner possible and will prevent the risk of inconsistent or varying adjudications with respect to individual members of the Class. Further, it is in the best interest of all parties and the judicial system to resolve these claims in one forum and without the need of repetitive, redundant individual actions. Finally, the difficulties in managing a class action will be slight in relation to the potential benefits to be achieved on behalf of every member of the Class.

- 15 -

Exhibit 1 to Notice of Removal
Page 15 of 25

84.     Plaintiffs and the Class do not bring any claims for improper deductions for post-production costs and non-payment of royalty on volumes of natural gas used off the lease or in the manufacture of products therefrom.

85.     Plaintiffs and the Class do not bring any claims for recovery of the earnouts paid under the Tall Oak GGPA.

86.     To Plaintiffs' knowledge, there is no other pending class litigation against Defendants for their failure to pay owners their share of the "earnout" revenue under the PSA.

### COUNT I - ALTER EGO, PIERCING THE CORPORATE VEIL & CIVIL CONSPIRACY

87.     Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

88.     Defendants share common ownership, control, finances, physical offices, and personnel.

89.     ███████████████████████████████████, and Calyx Energy are ███████████████████████████████████████████████████.

90.     Defendant Cahill exercised common control over all of the Defendants. Defendant Cahill utilized the other Defendant entities to: (1) defeat public convenience, (2) justify wrong, (3) perpetrate fraud, or (4) to defend crime. *King v. Modern Music Co.,* 2001 OK CIV APP 126, 33 P.3d 947.

91.     Defendant Cahill and Defendant Calyx Holdings utilized the various Defendant entities to perpetrate the fraudulent actions described above, including fraudulently concealing and appropriating revenue owed to Plaintiffs and the Class for natural gas production from Class Wells.

92.     Defendants are alter egos of each other.

- 16 -

Exhibit 1 to Notice of Removal
Page 16 of 25

93.     Defendants are designed, operated, and controlled such that their corporate existence is a design or scheme to perpetrate a fraud, or such that they are merely an instrumentality or adjunct of each other. Defendants used this scheme and common control to fraudulently appropriate millions of dollars in revenue from natural gas production from Plaintiffs and the Class.

94.     The harm suffered by Plaintiffs and the Class is the result of, and has been exacerbated by, Defendants' use of alter egos in an attempt to shield Defendants of liability for fraudulently appropriating revenue for natural gas production from Class Wells.

95.     All Defendants acted in concert with each other, with a collective meeting of the minds and a common goal to unlawfully benefit themselves of revenue from natural gas production from the Class Wells at the expense and detriment of Plaintiffs and the Class.

96.     All Defendants acted pursuant to an unlawful civil conspiracy to conceal and fraudulently appropriate revenue derived from natural gas production from the Class Wells, and each is liable for the damages suffered by Plaintiffs and the Class.

97.     Defendant Cahill's independent, direct, and fraudulent conduct enabled Defendants to perpetrate this fraud and scheme against Plaintiffs and the Class, and he is liable for the damages suffered by Plaintiffs and the Class.

98.     Defendant Cahill exceeded the scope of his authority as CEO of Calyx Energy, including but not limited to for the reasons that Defendant Cahill, as CEO of Calyx Energy, was not authorized to funnel revenue away from Calyx Energy and towards his other wholly-owned subsidiaries. Defendant Cahill is liable for the damages suffered by Plaintiffs and the Class.

- 17 -

Exhibit 1 to Notice of Removal
Page 17 of 25

## COUNT II - BREACH OF THE PRODUCTION REVENUE STANDARDS ACT

99.    Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

100.    Defendants owe certain statutory duties to Plaintiffs and the Class pursuant to the Production Revenue Standards Act, 52 Okla. Stat. §§ 570.1 through 570.15 ("PRSA").

101.    The PRSA "regulates the marketing, sale, and production of hydrocarbons from Oklahoma wells. It generally applies to all owners and all producing wells in Oklahoma with certain exceptions. It sets forth the operator's duties and its duties regarding proceed sharing/royalty disbursement requirements." *Krug v. Helmerich & Payne, Inc.*, 2015 OK 74, ¶13, 362 P.3d 205, 211.

102.    The PRSA requires that Defendants pay to Plaintiffs and the Class their share of the proceeds. The PRSA defines royalty proceeds as "the share of proceeds or *other revenue derived from or attributable to any production of oil and gas...*" 52 Okla. Stat § 570.2(8) (emphasis added). The PRSA's sweeping language includes revenue that is "attributable to any production" of natural gas. If Defendants received any revenue that was derived from *or* attributable to the natural gas production from the Class Wells, then the PRSA controls the ownership and disposition of such revenue.

103.    Under the PRSA, proceeds that Defendants owe to Plaintiffs and the Class are tied to the *production* of natural gas. As the Oklahoma Supreme Court explained "The Legislature in clear and unambiguous terms required timely payment when revenue was derived from or attributable to any production of natural gas." *Krug* at ¶ 20. The PRSA captures all revenue derived from or attributable to the *production* of natural gas. The PRSA directly applies to the PSA

- 18 -

Exhibit 1 to Notice of Removal
Page 18 of 25

earnouts that Tall Oak paid to Defendants based on the production of natural gas from the Class Wells.

104.    According to the statute, "should a violation of the [PRSA] occur, recovery for damages, interest, court costs, and attorneys' fees and other expenses is to be sought in the district courts." *Krug* at ¶14; 52 Okla. Stat. § 570.14(A) ("The district courts within this state shall have the sole and exclusive jurisdiction to determine the entitlement of any owner in a well to: (1) Its share of proceeds from production; or (2) Damages, interest, court costs, attorneys' fees or allowable litigation expenses incurred as a result of the violation of this act.")

105.    The earnouts paid to Defendants under the PSA are revenue attributable to the natural gas production from the Class Wells and are subject to the requirements of the PRSA.

106.    Defendants breached their duty under the PRSA and failed to pay Plaintiffs and the Class their share of the earnouts revenue under the PSA.

## **COUNT III-BREACH OF REASONABLY PRUDENT OPERATOR STANDARD**

107.    Defendants owe a duty to Plaintiffs and the Class to operate the Class Wells as a reasonably prudent operator.

108.    Pursuant to the Energy Litigation Reform Act, Defendants are required to operate the Class Wells as a reasonably prudent operator. 52 Okla. Stat. § 902.

109.    Pursuant to 52 Okla. Stat. § 902(1), Defendant Calyx Energy (and the other Defendants as alter egos of Defendant Calyx Energy) are required at all times to act "with due regard to the interests" of Plaintiffs and the Class regarding revenue derived from or attributable natural gas production.

- 19 -

Exhibit 1 to Notice of Removal
Page 19 of 25

110.    Defendant Calyx Energy (and the other Defendants as alter egos of Defendant Calyx Energy) breached their duty by failing to secure and remit to Plaintiffs and the Class their share of the revenue under the PSA.

111.    Defendants negotiated for and executed non-industry standard contracts with Tall Oak. The terms and conditions of the GGPA and PSA were conditioned upon Tall Oak not only performing midstream services, **but also paying revenue to Defendants in the form of "earnouts."** Plaintiffs and the Class were subjected to the non-standard terms under the GGPA and PSA but did not receive any of the PSA revenue derived from such non-standard terms.

112.    Defendant Calyx Energy, as a reasonably prudent operator, should have secured the earnout revenue attributable to the natural gas production from the Class Wells instead of funneling such revenue through its affiliates and alter egos. Defendant Calyx Energy, as a reasonably prudent operator, should have then disbursed to Plaintiffs and the Class their proportionate share of the earnout revenue. Defendant Calyx Energy failed to do so, and thus failed to act as a reasonably prudent operator.

113.    By engaging in the fraudulent scheme identified above, Defendants breached their duty to act as reasonably prudent operator.

114.    As a result of Defendants' breach, Plaintiffs and the Class have been harmed, including the loss of up to          dollars in revenue derived from or attributable to the natural gas production from the Class Wells.

## COUNT IV – UNJUST ENRICHMENT

115.    Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

- 20 -

Exhibit 1 to Notice of Removal
Page 20 of 25

116.    Defendants intentionally, knowingly, and willfully engaged in the heretofore alleged conduct with the intent to defraud Plaintiffs and the Class out of their share of the revenue derived from or attributable to production of natural gas from the Class Wells.

117.    Defendant Calyx Energy, as the operator of the Class Wells, should have secured the earnout revenue attributable to the natural gas production from the Class Wells instead of funneling such revenue through its affiliates and alter egos. Calyx Energy failed to do so.

118.    Instead, almost            of the earnout revenue was diverted directly to Defendant Calyx Energy's affiliates, alter egos, and/or owner.

119.    Defendants received earnouts under the PSA based on the natural gas production from the Class Wells. In order to receive such revenue, Defendants collectively committed the Class Wells to the GGPA and PSA—to the exclusion of Enable and EnLink services.

120.    The GGPA and PSA are not standard midstream contracts and do not contain standard midstream terms. The terms and conditions of the GGPA and PSA were conditioned upon Tall Oak not only performing midstream services, **but also paying revenue to Defendants in the form of "earnouts."**

121.    Plaintiffs and the Class were subjected to the non-standard contract terms, but did not receive any of the revenue that was paid under such non-standard contract terms. Defendants wrongfully kept all "earnout" revenue wholly unto themselves, to the exclusion of Plaintiffs and the Class.

122.    As a result of the scheme of conduct alleged herein, Defendants wrongfully benefited at the expense of Plaintiffs and the Class. Defendants derived and improperly retained up to            in revenue derived from or attributable to the natural gas production from the Class Wells.

- 21 -

Exhibit 1 to Notice of Removal
Page 21 of 25

123.    Without Defendants' intentional and illicit conduct as alleged herein, Plaintiffs and the Class would not have suffered the loss of millions in revenue that was diverted to affiliates, owners, and/or alter egos of producer Calyx Energy.

124.    It is against equity and good conscience for Defendants to secure the ill-gotten benefit of their deceit and to retain the amounts received by denying Plaintiffs and the Class their share of the earnout payments paid to Defendants under the PSA.

125.    Accordingly, as a matter of equity and good conscience, Defendants must be required to provide restitution to Plaintiffs and the Class as well as disgorgement of the benefits of the fraudulent transaction and scheme.

## COUNTS V—ACTUAL AND CONSTRUCTIVE FRAUD AND DECEIT

126.    Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

127.    Defendants intentionally, knowingly, and willfully engaged in fraudulent conduct to defraud Plaintiffs and the Class out of revenue attributable to the natural gas production from the Class Wells.

128.    Defendants collectively engineered a scheme to pocket revenue attributable to natural gas production from the Class Wells in the form of earnouts under the PSA.

129.    Defendants fraudulently concealed this revenue from Plaintiffs and the Class by diverting up to          in revenue to various affiliates and owners of Calyx Energy and by wholly failing to report this revenue to Plaintiffs and the Class.

130.    Defendants knowingly, intentionally, willfully, and falsely concealed from Plaintiffs and the Class the earnout revenue received under the PSA. Defendants were required to disclose to Plaintiffs and the Class all revenue attributable to the Class Wells, yet Defendants

- 22 -

Exhibit 1 to Notice of Removal
Page 22 of 25

affirmatively concealed all of the earnout revenue from the check stubs, 1099s, and revenue statements sent to Plaintiffs and the Class.

131.    Defendants knew these representations were false. Defendants made these false representations with actual, knowing, intentional, and willful intent.

132.    Plaintiffs and the Class exercised due diligence in reviewing the 1099s, check stubs, and revenue statements provided by Defendants; however, Plaintiffs and the Class were unable to discover Defendants' scheme based on a diligent review of the 1099s, check stubs, and revenue statements because Defendants falsely concealed the revenue from the earnouts on such documents it sent to Plaintiffs and the Class.

133.    As a result of Defendants' fraudulent concealment of their wrongdoing, Plaintiffs and the Class were precluded from discovering Defendants' wrongful conduct, all to the detriment of Plaintiffs and the Class.

134.    Defendants reported the false information to Plaintiffs and the Class in order to mislead Plaintiffs and the Class into believing that Defendants had paid them on all revenue derived from or attributable to the natural gas production from the Class Wells. Defendants made these misrepresentations and omissions with the intent to deceive Plaintiffs and the Class into believing that the revenue reported by Defendants was the total revenue attributable to the Class Wells.

135.    Plaintiffs and the Class justifiably relied on Defendants' false representations to their detriment, including but not limited to loss of revenue and reliance on the accuracy of the information reported on the 1099s, check stubs, and revenue statements. Plaintiffs and the Class relied on the information reported on the 1099s, check stubs, and revenue statements to deposit

- 23 -

Exhibit 1 to Notice of Removal
Page 23 of 25

the checks, to report taxes, and to not take action into inquiring into the propriety of Defendants' conduct. As a result of this reliance, Plaintiffs and the Class have suffered damages.

## **COUNTS VI—BREACH OF THE ENERGY LITIGATION REFORM ACT**

136.    Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

137.    Defendant Calyx Energy (and the other Defendants as alter egos of Defendant Calyx Energy) owe a duty to Plaintiffs and the Class under the ELRA to pay Plaintiffs and the Class on proceeds of production.

138.    Under 52 Okla. Stat. § 903 (Failure to Pay Proceeds From Production - Remedies), Defendant Calyx Energy (and the other Defendants as alter egos of Defendant Calyx Energy) are liable for punitive or exemplary damages, and/or disgorgement damages, if Defendants "failed to pay such proceeds [and] did so with the actual, knowing and willful intent: (a) to deceive the person to whom the proceeds were due, or (b) to deprive proceeds from the person the holder knows, or is aware, is legally entitled thereto."

139.    Defendant Calyx Energy (and the other Defendants as alter egos of Defendant Calyx Energy) breached the ELRA by failing to pay proceeds attributable to production to Plaintiffs and the Class with the actual, knowing and willful intent: (a) to deceive Plaintiffs and the Class, or (b) to deprive proceeds from Plaintiffs and the Class with knowledge or awareness that Plaintiffs and the Class were legally entitled to said proceeds.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request this Court for judgment against Defendants as follows:

(i)    an Order certifying this action pursuant to 12 Okla. Stat. § 2023(B)(3);

(ii)    actual damages in excess of $5,000,000.00;

- 24 -

Exhibit 1 to Notice of Removal
Page 24 of 25

(iii)   pre-judgment interest as provided by law and post-judgment interest as provided by law;

(iv)   disgorgement of profits, exemplary and punitive damages;

(v)   attorneys' fees as well as expert, litigation, and court costs; and

(vi)   any and other further relief this Court deems just and equitable.

**ATTORNEY'S LIEN CLAIMED**

Respectfully Submitted,

Chaille G. Walraven, OBA #31256
Mark E. Walraven, OBA #31257
GRAFT & WALRAVEN, PLLC
4801 Gaillardia Parkway, Ste 300
Oklahoma City, Oklahoma 73142
Ph: (580) 323-1516
chaille@gwlawok.com
mark@gwlawok.com

*and*

Bryan O. Blevins, Jr., *pro hac vice*
Provost Umphrey Law Firm
490 Park Street
Beaumont, TX 77701
P: (409) 835-6000
bblevins@pulf.com
*\*pending admission pro hac vice*

**Attorneys for Plaintiffs**

- 25 -

Exhibit 1 to Notice of Removal
Page 25 of 25