IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **TERESA GARRISON PRATT,** *et al.*, | ) ) ) |
| **Plaintiffs,** | ) ) ) |
| v. | ) ) Case No. 24-CV-452-GLJ |
| **CALYX ENERGY III, LLC,** *et al.*, | ) ) ) |
| **Defendants.** | ) |

## OPINION AND ORDER

On July 8, 2024, Plaintiffs Teresa Garrison Pratt, Longreach Energy 2, LLC, and Royfin Natural Gas, LLC, filed this action on behalf of themselves and all others similarly situated in the District Court for McIntosh County, Oklahoma, Case No. CJ-2024-79, against Defendants Calyx Energy III, LLC ("Calyx Energy"), Calyx Energy III Holdings, LLC ("Calyx Holdings"), Riverside Midstream Partners, LLC ("Riverside Midstream"), Riverside Gathering, LLC ("Riverside Gathering"), and Calvin D. Cahill. Plaintiffs allege Defendants committed fraud against Plaintiffs and the putative class by appropriating and concealing revenue derived from or attributable to the production of natural gas from wells located in McIntosh County, Oklahoma, and surrounding counties. Docket No. 2-1, at ¶¶ 15. On November 19, 2024, Defendants removed this action to this Court. Docket No. 2. On July 15, 2025, Plaintiffs filed an Amended Complaint adding Defendants Calyx Investments, LLC, and Calyx Investments II, LLC, additional factual allegations, and attaching the relevant oil and gas leases. Defendants now move to dismiss Plaintiffs'

Amended Complaint [Docket No. 56]. For the reasons stated below, the Court finds that the motion should be GRANTED.

## BACKGROUND

The First Amended Complaint alleges that Plaintiffs and the putative class own interests in oil and gas wells located in McIntosh County, Oklahoma, and the surrounding counties ("Class Wells"). Docket No. 45, at ¶ 19. Cahill obtained the rights to drill and operate oil and gas wells in these counties vis-à-vis Calyx Investments, Calyx Holdings, and Calyx Energy. Docket No. 45, at ¶ 17. In 2016, Cahill, through Calyx Energy, entered a contract with Enable Gathering and Processing, LLC ("Enable") for gas gathering and processing services ("Enable Contract"). Docket No. 45, at ¶¶ 21. Pursuant to the Enable Contract, Enable performed midstream services at standard rates. Docket No. 45, at ¶ 22.

Cahill subsequently formed Riverside Midstream and Riverside Gathering to construct and operate a gathering system for the Class Wells ("Riverside Gathering System."). Docket No. 45, at ¶ 23. While the Riverside Gathering System was being constructed, Defendants contracted with Enable and EnLink Midstream Services, LLC ("EnLink") to provide processing services. Docket No. 45, at ¶ 25. On or about August 25, 2017, Riverside Midstream and Riverside Gathering executed an Asset Purchase and Sale Agreement ("PSA") with Tall Oak Woodford, LLC ("Tall Oak"), and Defendant Calyx Energy executed a Gas Gathering and Processing Agreement ("GGPA") with Tall Oak. Docket No. 45, at ¶¶ 30-24. Under the terms of the GGPA between Calyx Energy and Tall Oak, Calyx Energy agreed not to extend or renew its agreements with Enable or EnLink, and upon completion of the construction of the Panther Creek Processing Plant, Calyx

would "dedicate" gas from the Class Wells solely to Tall Oak, despite the Riverside Gathering System being owned by "Defendant Riverside."[1] Docket No. 45, at ¶¶ 44-48.

Pursuant to the terms of the PSA, Riverside Midstream and Riverside Gathering agreed to sell, *inter alia*, the Riverside Gathering System to Tall Oak and agreed that Calyx Energy, a non-party to the PSA, would divert natural gas production away from Enable and Enlink. Docket Nos. 57 & 45 at ¶¶ 35-36. In return, Tall Oak was to pay "earnouts" calculated in part based on the diverted natural gas production to "Cahill, Riverside, Calyx Investments, and/or Calyx Holdings." Docket No. 45, at ¶¶ 35-36. The Panther Creek Processing Plant was completed in 2019, and Calyx terminated its processing contract with Enable and diverted the gas to Tall Oak for processing. Docket No. 45, at ¶ 8. Upon meeting its volume requirements, Calyx Energy was paid earnouts but did not pay Plaintiffs a share of the earnouts.

On July 8, 2024, Plaintiffs Teresa Garrison Pratt, LongReach Energy 2, LLC, and Royfin Natural Gas, LLC, filed this action in the District Court of McIntosh County, Oklahoma alleging six causes of action: alter ego, breach of the Production Revenue Standards Act ("PRSA"), breach of the reasonably prudent operator standard, unjust enrichment, actual and constructive fraud, and breach of the Energy Litigation Reform Act, ("ELRA"). Docket No. 2-1. On November 19, 2024, this action was removed to this Court and, after being granted leave to amend, Plaintiffs Teresa Garrison Pratt and Long Reach Energy 2, LLC filed their Amended Class-Action Complaint on July 15, 2025, alleging the

---

[1] It is unclear whether the Riverside Gathering System is owned by Riverside Midstream, Riverside Gathering, or both.

same six causes of action.² Docket Nos. 2 & 45. Defendants now move to dismiss the Amended Complaint for failing to state a claim upon which relief can be granted. Docket No. 56.

## LEGAL STANDARD

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but the claim must be "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement. . . . To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly*, 550 U.S. at 555-57, 570) (internal quotations marks omitted). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id*. at 679.

When reviewing a motion for dismissal under Rule 12(b)(6), the Court "'must determine whether the complaint sufficiently alleges facts supporting all the elements necessary to establish an entitlement to relief under the legal theory proposed.'"

---

² Plaintiff RoyFin Natural Gas, LLC, was voluntarily dismissed on November 26, 2024. Docket No. 10.

*Commonwealth Prop. Advocs., LLC v. Mortg. Elec. Registration Sys., Inc.*, 680 F.3d 1194, 1201-02 (10th Cir. 2011) (quoting *Forest Guardians v. Forsgren*, 478 F.3d 1149, 1160 (10th Cir. 2007)). "While the 12(b)(6) standard does not require that Plaintiff establish a prima facie case in her complaint, the elements of each alleged cause of action help to determine whether Plaintiff has set forth a plausible claim." *Khalik v. United Air Lines*, 671 F.3d 1188, 1192 (10th Cir. 2012). Claims based in fraud are subjected to a heightened pleading standard and must "state with particularity the circumstances constituting fraud[.]" Fed. R. Civ. P. 9.

## ANALYSIS

### I. The Lease Language Does Not Entitle Plaintiff to Earnouts

At the outset, Defendants assert all Plaintiffs' claims fail because, although Plaintiffs attach various leases to their Amended Complaint, they fail to: (i) allege the leases create any agreement between Plaintiffs and Defendants, and (ii) cite specific language entitling Plaintiffs to a portion of the earnouts from the diverted natural gas production. The Court declines to grant Defendants' motion to dismiss on the first basis. Although Plaintiff could have, and arguably should have, explicitly alleged an agreement existed between Plaintiffs and Defendants, Plaintiffs' Amended Complaint does allege Plaintiffs Teresa Garrison Pratt and Longreach Energy 2, LLC, hold royalty interests in various wells pursuant to the leases attached to the Amended Complaint. Docket No. 45, at ¶¶ 74 & 75. These leases contain provisions entitling Plaintiffs to royalties on oil and gas "produced, saved, and sold" and Calyx Energy is the lessee in at least some of the leases. Docket No. 45-1, at pp. 1 & 4; Docket No. 45-2, at pp. 11, 15, 19,29, 54, 58, 68,

87, 99, & 123.[3] Thus, because there are leases between Plaintiffs and Calyx Energy which entitle Plaintiffs to royalties, the Court finds dismissal inappropriate on the basis that Plaintiffs did not explicitly claim a contract between Plaintiffs and Defendants.

The pertinent question, however, is whether the royalty clauses in these leases entitle Plaintiffs to a portion of the earnouts they allege were paid to Cahill, Riverside, Calyx Investments, and/or Calyx Holdings. Because the leases create the duty to pay royalties, the Court begins its analysis by looking at the royalty clauses in the leases between Plaintiffs and Calyx Energy. *See Base v. Devon Energy Prod. Co*, 2024 OK 3, ¶ 37, 563 P.3d 934, 954 ("We determined that the PRSA's precursor statute did not create the duty to pay loyalties to the lessor; the lease (i.e., the contract) did that. . . . Our holding confirmed that a PRSA claim is a contractual claim.") (citing *Purcel v. Santa Fe Minerals, Inc.*, 1998 OK 45, ¶ 22, 961 P.2d 188, 194).

Leases are to be construed in a manner "as a whole so as to give effect to every part using each clause to help interpret the others" by applying "the related rule of interpretation [such] . . . that the intention of the parties is to be ascertained from the writing alone, if possible." *Panhandle Coop. Royalty Co. v. Cuningham*, 1971 OK 63, ¶ 15, 495 P.2d 108, 113 (internal citations omitted). The leases are to be construed in favor of the lessor but not interpreted in a manner that makes "a better contract than the parties themselves entered." *Roye Realty & Developing, Inc. v. Watson*, 1996 OK 93, ¶ 33, 2 P.3d 320, 329.

---

[3] Notably, there are leases which seem to have no connection to any of the defendants, and it is unclear to the Court if they bear any relevance on the current matter.

The relevant leases here require royalties be paid "for gas . . . produced, saved, and sold."[4] Docket No. 45-2, at pp. 11, 15, 19, 29, 54, 58, 68, 87, 99, & 123. Production is "not only the discovery of the product but also extracting it from the ground." *Id*. at ¶ 32, 2 P.3d at 328 (citing *Walden v. Potts*, 1944 OK 299, ¶ 8, 152 P.2d 923, 924). "[G]as is 'sold' [however,] when it enters the purchaser's line." *Id.* "Under the plain terms of these . . . 'production-type' leases, the lessee is not obligated to pay a royalty on the value of gas in the abstract, but only on the cash value of gas that is actually produced *and* sold from the leased property." *Watts v. Atl. Richfield Co.*, 115 F.3d 785, 791 (10th Cir. 1997) (emphasis added).

<u>Does the PRSA Create a Right to Royalties?</u>   Neither Plaintiffs' Amended Complaint nor their response brief in opposition to Defendants' Motion to Dismiss cite to any lease language creating a right to the earnouts. Instead, it seems Plaintiffs argue the PRSA itself is where they derive such entitlement to royalties on the earnouts. The Court finds this argument unpersuasive as it conflates two separate issues: (1) whether Plaintiffs' respective leases entitle them to royalties on the earnouts, and (2) if so, does the definition

---

[4] The "and" in "for gas . . . produced, saved, and sold" is conjunctive, not disjunctive. The royalty clause, states in full, "To pay Lessor for gas (together with all its constituents) produced, saved, and sold by Lessee Three-Sixteenths (3/16ths) of the net proceeds realized by the Lessee from such sale thereof, but in no event more than Three-Sixteenths (3/16ths) of the net amount actually received by Lessee, less the same fractional or decimal share of Post Wellhead Costs and Production Taxes; if such sale is to an affiliate of Lessee, proceeds received shall be the proceeds actually received by Lessee from such affiliate sale if Lessee's sale to such affiliate is on the same basis as said affiliate purchases gas from non-affiliated producer(s)[.]" Docket No. 45-2, at p. 11. This language plainly contemplates the occurrence of a sale. *See also Conjunctive/disjunctive canon*, BLACK'S LAW DICTIONARY (12th ed. 2024) ("The doctrine that in a legal instrument, *and* joins a conjunctive list to combine items, while *or* joins a disjunctive list to create alternatives.").

of royalty proceeds under the PRSA cover the earnouts such that Defendants would be obligated to pay interest for unpaid royalties.

In support of their argument that they are entitled to royalties on any earnouts under the PRSA, Plaintiffs point to *Purcell v. Santa Fe Minerals, Inc.*, 1998 OK 45, ¶ 22, 961 P.2d 188, 194, arguing that the Oklahoma Supreme Court held the provisions of the PRSA are incorporated into and become part of the underlying lease. In *Purcell*, the Oklahoma Supreme Court was asked to determine the appropriate statute of limitations for a claim of statutory interest brought under the precursor to the PRSA, 52 Okla. Stat. § 540. 961 P.2d at 189. The court found "[t]here is no doubt that existing law is incorporated into a lease at the time a lease is created[,]" *id.* at ¶ 21, 961 P.2d at 193 (citing *Heiman v. Atl. Richfield Co.*, 1995 OK 19, n. 4, 891 P.2d 1252), but ultimately concluded the statute of limitations governing contract claims was the appropriate statute because Purcell's claim was "based upon a breach of the obligation to pay the royalty arising *ex contractu* in the manner prescribed by § 540[,]" and "the existence of a lease is necessary in an action to recover damages calculated in accordance with § 540." *Id.* at ¶¶ 19, 22, 961 P.2d at 192-94 (italics in original). As such, although the Oklahoma Supreme Court indicated existing law is incorporated into a lease it did not hold that the PRSA's definition of "royalty proceeds" is, regardless of the lease language, incorporated into all existing oil and gas leases such that lessors are entitled to royalties on "proceeds or other revenue derived from or attributable to any production of oil and gas" at the time of production.

Plaintiffs also rely on *H.B. Krug v. Helmerich & Payne, Inc.*, 2015 OK 74 362 P.3d 205, claiming the Oklahoma Supreme Court recognized a "bright-line test for when the

PRSA applies is . . . [t]he moment natural gas is extracted (that is produced) from the underground reservoir." Docket No. 65, at p. 13-14. However, as noted above, whether the PRSA applies at the time of production (or not) is a separate inquiry from whether Plaintiffs are entitled to a portion of the earnouts under their leases. In *Krug*, the Oklahoma Supreme Court did not hold that the PRSA creates a right to royalties. The claims in *Krug* involved a settlement payment for uncompensated drainage which the plaintiffs argued began to accrue interest under the PRSA when defendants failed to pay a portion of the settlement proceeds to royalty owners. In assessing whether the PRSA's pre-prejudgment interest applied, the Oklahoma Supreme Court highlighted that the PRSA's purpose is to ensure royalty owners are timely paid their share of proceeds, and "[t]he legislature in clear and unambiguous terms required timely payment when revenue was derived from or attributable to any production of natural gas." 2015 OK 74, ¶ 20, 362 P.3d 205, 214. The court held the prejudgment interest set forth under the PRSA did not apply to uncompensated drainage because it was not included in the definition of "royalty proceeds," as defined in the PRSA, which included revenue derived from or attributable to any production of oil and gas. *Id.* ¶ 21, 362 P.3d at 214. Ultimately, both *Purcell* and *Krug* address the application of the PRSA after a right to royalties has been established under the lease language.[5]

---

[5] Plaintiffs also cite to *Watts v. Atl. Richfield Co.*, 115 F.3d 785, 791 (10th Cir. 1997) arguing the Tenth Circuit found "a payment **related to production of gas** is subject to a royalty interest even when that payment is not directly part of a sales transaction and comes in a lump sum." Docket No. 65, at p. 14. (emphasis in original). However, "[a]lthough containing slightly varying language, all of the leases [in *Watts*] require[d] royalties to be paid only on the proceeds from the sale of gas produced from the wells—that is gas physically extracted from the earth and sold." 115

Plaintiffs maintain that the practical effect of concluding the PRSA does not entitle them to a portion of the earnouts results in the PRSA not creating a duty for Defendants to pay royalties on revenue attributable to oil and gas production and/or sale. This is correct. Oklahoma law is clear, the PRSA does not create royalty rights—the oil and gas leases do. *Cline v. Sunoco*, ___ F.4th ___, 2025 WL 3199871, at *23 (10th Cir. Nov. 17, 2025) ("*In Purcell*, the Oklahoma Supreme Court held that a PRSA violation 'is based upon a breach of the obligation to pay the royalty arising *ex contractu* in the manner prescribed by [the PRSA].'") (quoting *Purcell*, 1998 OK 45, ¶ 19, 961 P.2d 188, 193 (alterations in original); *Hebble v. Shell W. E & P, Inc.*, 2010 OK CIV APP 61, ¶ 18, 238 P.3d 939, 945 ("The PRSA does not create a statutory claim. Rather, it imposes standards for the treatment of proceeds from the sale of oil and gas production."). *Foster v. Apache Corp.*, 285 F.R.D. 632, 641 (W.D. Okla. Aug. 20, 2012) ("[T]he lessee's obligations to the mineral owner are determined largely by the terms of the oil and gas lease."); *Mittelstaedt v. Santa Fe Mins., Inc.*, 1998 OK 7, ¶ 8, 954 P.2d 1203, 1205 ("In all these opinions the Court had to fix the rights and duties of the parties according to the language of the leases and the implied covenants that go with them."); *Roye Realty*, 1996 OK 93, ¶ 32, 2 P.3d at 328 ("It is apparent from the lease language that the Watsons are entitled to royalties on gas produced

---

F.3d at 791. The *Watts* court did not hold the PRSA created an entitlement to royalties on production, but instead found the "district court erred in concluding that royalties [were] not payable . . . because the leases [did] not expressly require payment of royalties on settlement proceeds[,]" because the relevant question was "'whether or not the funds making up the payment actually pay for any gas severed from the ground.'" *Id.* (quoting *Independent Petroleum Ass'n of Am. v. Babbitt*, 92 F.3d 1248, 1260 (D.C. Cir. 1996)). Whether Plaintiffs have alleged the earnouts constitute payment for gas is discussed *infra*.

and sold or used off the leased premises, or gas produced saved and sold from the premises."). The PRSA, "does not create a statutory claim[,]" *Hebble*, 2010 OK CIV APP 61, ¶ 18, 238 P.3d at 945, but "provides statutory protection for timely and full payments *based on the terms of a contract.*" *Swafford v. Newfield Exploration Co.*, 2020 WL 5881276, at *7 (D. Colo. Sept. 24, 2020) (applying Oklahoma law).

<u>Are the Earnouts Royalty Bearing?</u>    Accordingly, per the terms of the leases, unless the earnouts constitute payment for gas, Plaintiffs are not entitled to royalties. The leases do not need to expressly identify the earnouts so long as the earnouts constitute payment, at least in part, for gas produced and sold. *See Watts*, 115 F.3d at 790 ("If the settlement proceeds constitute payment for gas actually produced and sold, it is immaterial that the leases do not explicitly provide for the payment of royalties on settlement proceeds. Rather, for the proceeds to be non-royalty bearing, the leases would have to expressly exclude settlement proceeds."). In the context of settlement proceeds, the Tenth Circuit has indicated that where "a lessee accepts a settlement payment in exchange for a reduced future price term, the lessors are entitled to a royalty payment on two components, each of which constitutes consideration for actual production: '(1) the proceeds obtained by the lessee from the sale of gas at the bought-down price; and (2) a commensurate portion of the settlement proceeds that is attributable to price reductions applicable to future production and under the renegotiated gas sales agreement as production occurs.'" *Id.* at 793 (quoting *Harvey E. Yates Co. v. Powell*, 98 F.3d 1222, 1236 (10th Cir. 1996) (applying New Mexico law)).

In this regard, the Amended Complaint alleges that the earnouts were tied to the production of natural gas and that the terms of the PSA "were conditioned upon Tall Oak not only performing midstream services but also paying revenue to Defendants in the form of 'earnouts.'" Docket No. 45, at ¶ 115. The Amended Complaint also alleges "Plaintiffs and the Class were subjected to non-standard terms under the GGPA and PSA but did not receive any of the PSA revenue derived from such non-standard terms." *Id.* Plaintiffs do not allege the production of natural gas was sold, the earnouts constitute payment for gas sold, or that the substandard rates/terms that Defendants agreed to resulted in a reduction of any future or past due royalties on gas sold. Accordingly, the Court finds that Plaintiffs fail to allege an entitlement to the earnouts under the terms of the oil and gas leases.

II.   **Causes of Action**

Without an entitlement to royalties on the earnouts, the Court finds all of Plaintiffs claims should be dismissed.

<u>Count II: Breach of the PRSA</u>.  Inasmuch as the above analysis heavily intersects with the PRSA, the Court foregoes regurgitating the same analysis. In short, it is clear the PRSA does not create an entitlement to proceeds; it presumes the existence of such entitlement and "imposes standards for the treatment of proceeds from the sale of oil and gas production." *Hebble*, 2010 OK CIV APP 61, ¶ 18, 238 P.3d at 945. Without an entitlement to proceeds, Plaintiffs' PRSA claim must be dismissed. *See Heiman*, 1995 OK

19, ¶ 9, 891 P.2d at 1257 (finding the precursor to the PRSA did not apply because plaintiff was not legally entitled to share in the sale proceeds.).[6]

*Count III: Breach of Reasonably Prudent Operator Standard.* "The prudent operator standard is a 'measuring stick' to determine the diligence required of a lessee; it is an equitable principle, and thus not inflexible. *B&B Buckles Props., LLC v. Oil Producers Inc. of Kan.*, 2022 OK CIV APP 34, ¶ 26, 520 P.3d 392, 401 (citing *Texas Consol. Oils v. Vann*, 1953 OK 90, ¶ 45, 258 P.2d 679, 401); 52 Okla. Stat. § 902. This "imposes on a lessee the implied duty to do whatever in the circumstances would be reasonably expected of a prudent operator of a particular lease, having rightful regard for the interest of both the lessor and the lessee." *Rogers v. Westhoma Oil Co.*, 291 F.2d 726, 732 (10th Cir. 1961); *Watts*, 115 F.3d at 794.

Plaintiffs allege Defendants violated this standard by "failing to secure and remit to Plaintiffs and the Class their share of the revenue under the PSA[,]" and by subjecting Plaintiffs "to the non-standard terms under the GGPA and PSA[.]" Docket No. 45, at ¶ 114-115. Although there does not appear to be any case law applying the prudent operator standard to a situation such as this, it is self-evident a prudent operator would not be obligated to withhold and remit a portion of the earnouts for lessors not entitled to royalties thereon. Additionally, to the extent Plaintiffs allege Defendants violated this standard by subjecting Plaintiffs to "non-standard" terms under the GGPA and PSA, Plaintiffs fail to

---

[6] Without deciding the issue, the Court notes the PRSA may very well be applicable to all revenue derived from or attributable to gas production, irrespective of whether it is sold, so long as the lessor has a right to proceeds pursuant to the terms of their lease.

allege how these terms were non-standard and if said terms impacted any right they have to royalties on gas produced and sold.[7] The Court finds this insufficient to state a claim for a relief under the prudent operator standard. *See Bell Atl. Corp.*, 550 U.S. at 545 ("Federal Rule of civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests[.]'") (quoting Fed. R. Civ. P. 8(a)(2) & *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

<u>Count VI: Breach of the ELRA.</u>  The ELRA contemplates an award of punitive, exemplary, or disgorgement damages where it is found "upon clear and convincing evidence that the holder who failed to pay . . . proceeds did so with the actual, knowing and willful intent: (a) to deceive the person to whom the proceeds were due, or (b) to deprive proceeds from the person the holder knows, or is aware, is legally entitled thereto." 52 Okla. Stat. § 902. Without an entitlement to royalties, there can be no finding that Defendants failed to pay proceeds that Plaintiffs were legally entitled. Accordingly, the Court dismisses Plaintiffs' PRSA and ELRA claims.

<u>Count IV: Unjust Enrichment.</u>  Under Oklahoma law unjust enrichment is "a condition which results from the failure of a party to make restitution in circumstances

---

[7] It appears Plaintiffs maintain the GGPA and PSA are "not standard midstream contracts and do not contain standard midstream terms[, because t]he terms and conditions of the GGPA and PSA were condition upon Tall Oak not only performing midstream services, **but also paying revenue to Defendants in the form of 'earnouts.'**" Docket No. 45, at ¶ 124 (bold in original). Although this may not be standard, it is unclear to the Court how if it all this impacts Plaintiffs' entitlement to royalties on the production once it is sold, and the Amended Complaint does not identify other non-standard terms/rates.

where it is inequitable, *i.e.*, the party has money in its hands that, in equity and good conscience, it should not be allowed to retain." *Harvell v. Goodyear Tire & Rubber Co.*, 2006 OK 24, ¶ 18, 164 P.3d 1028, 1035. Unjust enrichment is an equitable remedy requiring "an allegation of some active wrongdoing on the part of the person against whom recovery is sought such as fraud, abuse of confidence, or unconscionable conduct." *Randle v. City of Tulsa*, 2024 OK 40, ¶ 26, 556 P.3d 612, 620 (citing *Easterling v. Ferris*, 1982 OK 99, ¶ 10, 651 P.2d 677, 680 (Okla. 1982)).

"Unjust enrichment typically consists of '(1) the unjust (2) retention of (3) a benefit received (4) at the expense of another.'" *Cherokee Nation v. McKesson Corp.*, 529 F. Supp. 3d 1225, 1240 (E.D. Okla. Mar. 29, 2021 (quoting *Okla. Dep't of Secs. ex rel Fought v. Blair*, 2010 OK 16, ¶ 22, 231 P.3d 645, 658). The elements of unjust enrichment are "relatively broad," however, "the nature of an unjust enrichment claim primarily exists where an exchange or transaction occurs resulting in one party substantially and unjustly benefiting at the expense of another." *Id.* Like Plaintiffs' claim under the prudent operator standard, Plaintiffs assert Defendants were unjustly enriched by retaining millions of dollars in revenue in the form of earnouts. But without an entitlement to a portion of the earnouts, it remains patently unclear to the Court how, if at all, Defendants were unjustly enriched at Plaintiffs' expense. Indeed, Plaintiffs never allege (i) production was sold such that they would be entitled to royalties, (ii) the earnouts constitute payment for gas sold, or (iii) the PSA negatively impacted their right to past or future royalties on gas produced, saved, and sold. Instead, it seems to the Court that the gas "dedicated" to Tall Oak was

sold, or will be sold, at which point Plaintiffs would be entitled to royalties based on their leases.

As alleged, Defendants did not have an obligation to pay a portion of the earnouts to Plaintiffs, and it is unclear what, if any, detriment Plaintiffs have suffered. *See City of Tulsa v. Bank of Okla., N.A.*, 2011 OK 83, ¶ 19, 280 P.3d 314, 319 ("One is not unjustly enriched . . . by retaining benefits involuntarily acquired which law and equity give him absolutely without any obligation on his part to make restitution.") (quoting *McBride v. Bridges*, 1950 OK 25, ¶ 8, 215 P.2d 830, 832; *See Van Zanen v. Qwest Wireless, L.L.C.*, 522 F.3d 1127, 1130 (10th Cir. 2008) ("The clear import of the decision is not that the Van Zanens failed to incur an expense; rather, it is that the Van Zanens received value for their money and that in the absence of any unfair detriment, there is no injustice to prevent.") (applying Colorado law). Therefore, the Court dismisses Plaintiffs' claim for unjust enrichment.

<u>Count V: Actual and Constructive Fraud.</u>   Actual fraud is "the intentional misrepresentation or concealment of a material fact which substantially affects another person." *Sutton v. David Stanley Chevrolet, Inc.*, 2020 OK 87, ¶ 10, 475 P.3d 847, 852 (quoting *Patel v. OMH Med. Ctr., Inc.*, 1999 OK 33, ¶ 34, 987 P.2d 1185, 1199). Conversely, constructive fraud exists "[i]n any breach of duty which, without an actually fraudulent intent, gains an advantage to the person in fault, or any one claiming under him, by misleading another to his prejudice of any one claiming under him[.]" 15 Okla. Stat. § 59. Constructive fraud "may be defined as any breach of a duty which, regardless of the actor's intent, gains an advantage for the actor by misleading another to his prejudice."

*Patel*, 987 P.2d at 1199. "[T]he first question is always whether there was a duty upon the actor to disclose the whole truth." *Sutton*, 475 P.3d at 854 (citing *Barry v. Orahood*, 1942 OK 419, ¶ 14, 132 P.2d 645, 648.

Plaintiffs allege Defendants intentionally concealed that the earnouts were attributable to production and they were obligated to disclose the revenue under the PRSA. Docket No. 45, at ¶¶ 130-139. The PRSA gives "royalty owners a right to be accurately informed of the facts and place[s] a legal duty on [operators] to accurately inform [royalty owners] of the facts on which the royalty payments are based." *Howell v. Texaco, Inc.*, 2004 OK 92, ¶ 31, 112 P.3d 1154, 1161. It provides a list of information that must "be included with each payment made to an interest owner from the sale of oil or gas[.]8" 52 Okla Stat. § 570.12. Absent a statutory right to share in the earnouts, Plaintiffs' fraud claims fail as there was no obligation on behalf of Defendants to disclose the proceeds.9 *See Cline*, 2025 WL 3199871, at *24 ("In this context, owners suing for an intentional tort like fraud or deceit are alleging fraud in the *performance* of existing contracts (or leases), not that they detrimentally relied on the promises of the defendant to enter a contract or lease in the

---

[8] Specifically, it requires: (1) lease or well identification; (2) month and year of sales included in the payment; (3) total barrels or MCF attributed to such payment; (4) price per barrel or MCF, including British Thermal Unit adjustment of gas sold; (5) total amount attributed to such payment of severance and other production taxes, with the exception of windfall profit tax;(6) net value of total sales attributed to such payment after taxes are deducted; (7) owner's interest, expressed as a decimal in production from the property; (8) owner's share of the total value of sales attributed to such payment prior to any deductions; (9) owner's share of the sales value attributed to such payment less owner's share of the production and severance taxes; and (10) a specific listing of the amount and purpose of any other deductions from the proceeds attributed to such payment due to the owner upon request by the owner.

[9] Arguably, Defendants would be required to disclose the earnouts to the extent they impacted Plaintiffs' royalties on gas sold. Here, the Amended Complaint as pled does not allege the earnouts reduced Plaintiffs' past or future royalties.

first place. (i.e., fraudulent inducement). The owners already have a protectable interest to be paid royalties (and interest for late payments under the PRSA based on their existing 'contracts' or leases.") (emphasis in original) (internal quotations and citations omitted). Therefore, the Court dismisses Plaintiffs' actual and constructive fraud claims.

<u>Count I: Alter-Ego.</u>   Having found dismissal appropriate for all other claims, Plaintiffs' alter-ego claim cannot stand alone. Alter ego is an equitable doctrine utilized to disregard corporate formalities under certain conditions. *Lifetouch Nat'l Sch. Studios Inc. v. Okla. Sch. Pictures, LLC*, 2024 OK CIV APP 17, ¶ 22, 554 P.3d 764, 772-73. It "can be employed to establish, in the same action, (1) the liability of an instrumentality for wrongful conduct, and (2) the liability of the dominant company for the wrongful acts of its instrumentality." *Id.* ¶ 23, 554 P.3d at 772-32. Alternatively, it can also be utilized in a separate action to collect on a judgment previously obtained. *Id.* ¶ 24, 554 P.3d at 773. However, "[a] finding of fact of alter ego, standing alone, creates no cause of action." 1 WILLIAM MEADE FLETCHER ET AL., FLETCHER CYCLOPEDIA OF THE LAW OF PRIVATE CORPORATIONS § 41.10 (rev. ed. 1999); *Lifetouch*, at 780 (Blackwell, J., concurring) ("As the majority acknowledges, the alter-ego doctrine is not a stand-alone cause of action."). Thus, because there remain no viable causes of action, the Court dismisses Plaintiffs' alter-ego claim.

### III.   Leave to Amend

Lastly, the Court finds Plaintiffs should not be granted leave to amend for three reasons. First, Plaintiffs have not formally or informally, via their briefing, requested leave to amend. *See Calderon v. Kan. Dep't of Soc. & Rehab. Servs.*, 181 F.3d 1180, 1186 (10th

Cir. 1999) (recognizing "[a] court need not grant leave to amend when a party fails to file a formal motion."). Second, Plaintiffs have previously been granted the opportunity to amend their complaint after Defendants' previous motion to dismiss highlighted the state court petition did not attach the relevant oil and gas leases, allege gas production was sold, or point to lease language entitling Plaintiffs to a portion of the earnouts. Docket Nos. 21, 34 & 45. Third, Plaintiffs' briefing does not indicate to the Court that there exist facts entitling Plaintiffs to a portion of the earnouts such that their claims may survive following amendment. Indeed, the thrust of the motion to dismiss before the Court today is that Plaintiffs fail to allege an entitlement to the earnouts based on the terms of their leases or otherwise because there is no allegation production was ever sold. *See* Docket No. 56, at pp. 9-11; Docket No. 65, at pp. 2-4. Despite this issue being flagged in Defendants' previous motion to dismiss, *see* Docket No. 21, and the primary topic in the present motion to dismiss, Docket No. 56, Plaintiffs never allege in the Amended Complaint or otherwise that (i) oil and gas was ever in-fact sold rather than "dedicated"; (ii) the relevant leases entitle Plaintiffs to royalites on the earnouts,[10] and (iii) the terms of the PSA negatively impacted their past or future royalties on production sold. For these reasons, the Court finds Plaintiffs should not be granted leave to amend.

## CONCLUSION

In sum, Plaintiffs Amended Complaint fails to allege they are entitled to share in a portion of the earnouts pursuant to the terms of the leases and, as a result, all of Plaintiffs

---

[10] In fact, Plaintiffs never point to any lease language in their Amended Complaint or in response to the present motion to dismiss but, instead, rely solely on the argument that the PRSA entitles them to royalties ultimately placing the onus on the Court to review the oil and gas leases.

claims fail to state a claim upon which relief may be granted. Accordingly, Defendants' Motion to Dismiss Plaintiffs' Amended Class-Action Complaint [Docket No. 56] is hereby GRANTED and this action dismissed. A separate Judgment will follow.

    IT IS SO ORDERED this 18th day of December 2025.

_____
**GERALD L. JACKSON**
**UNITED STATES MAGISTRATE JUDGE**